143 So.2d 13 (1962)
Hansel E. FORT, Petitioner,
v.
HOOD's DAIRY, INC., Massachusetts Bonding and Insurance Company, and the Florida Industrial Commission, Respondents.
No. 31600.
Supreme Court of Florida.
June 27, 1962.
George N. Meros, St. Petersburg, for petitioner.
Calvin A. Pope of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, Burnis T. Coleman and Patrick H. Mears, Tallahassee, for respondents.
TERRELL, Justice.
In August 1956, petitioner, hereinafter referred to as the "employee," was injured in a compensable accident while working for respondent Hood's Dairy, Inc., hereinafter referred to as the "employer." A heavy beam which was used as a chain hoist broke causing injuries to employee's right hand, his pelvis was fractured, the internal portion of his genitals and his urethra were torn from the bladder and a permanent stricture of his urethra resulted which requires dilation by his doctor approximately every three months, necessitating medication and loss of time from his work. In addition to these infirmities, the employee is plagued with prostatitis which must be relieved periodically by massage. The culminating result of the accident was to render the employee permanently impotent.
*14 The employee was temporarily totally disabled from the date of the accident until January 14, 1957, when he returned to work for the employer and has continued in said employ to date of this suit. At all times since the date of the accident, the employee has been furnished with medical care by the employer. Since he returned to his job his work has been satisfactory and he has received compensation equal to or greater than he received before the accident. He has in fact received several increases in compensation. The employee has worked for the employer for about 25 years, he is 49 years old, cannot read or write but is faithful and dependable.
Pursuant to the foregoing factual statement, the employee filed claim seeking compensation for permanent partial disability, medical care and attorney's fees. A hearing was conducted by the deputy commissioner, who on March 21, 1961, entered an order finding, inter alia, that the employee had sustained a 35% partial permanent disability of the body as a whole and that although the employee had not suffered a loss of wages, his earning capacity had been reduced by 35%. In addition, the deputy found that the employee had sustained a 15% permanent partial disability to the ring finger of his right hand. The deputy ordered the carrier to provide employee with medical attention for the balance of his life or so long as said treatment was necessary. On appeal to the full commission, the order of the deputy commissioner was reversed on the ground that the employer had never refused medical care to the employee and that he had sustained no loss of wage earning capacity. From the order of the full commission we are confronted with a review by certiorari.
The first point for determination may be stated as follows: When the full commission reversed the order of the deputy commissioner holding that the employee sustained a loss of wage earning capacity equivalent to 35% permanent partial disability of the body as a whole, did it commit error in the contemplation of § 440.02(9), Florida Statutes, F.S.A.?
The employer contends that petitioner's injury falls in the non-scheduled class and is governed by § 440.02(9), Florida Statutes, F.S.A., which provides that in order to recover therefor the employee must show an "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." The employer contends further that under the rule or the statute so quoted, if the employee cannot show diminution of wage earning capacity in the same employment, his case is finished. The full commission grounded its order of reversal on a like interpretation of the quoted statute in addition to finding that there was no substantial, competent evidence that accords with reason and logic to support the finding of the deputy commissioner.
The employee counters the contention of employer with the contention that earnings subsequent to an injury were not the sole factor but only one of the factors to be considered by the deputy commissioner in making up his judgment as to disability under the Workmen's Compensation Act. Ball v. Mann, Fla. 1954, 75 So.2d 758, and Southern Bell Telephone & Telegraph Co. v. Bell, Fla. 1959, 116 So.2d 617, are relied on to support this contention. We think the variables pointed out and discussed in both the last cited cases may be employed by the deputy to enlarge or retard earning capacity as the circumstances of the case in hand may seem fair and just. See also Henderson v. Sol Walker & Co., Fla., 138 So.2d 323.
Reading the order of the full commission reversing the order of the deputy commissioner, leaves no doubt that the full commission was on notice of the fact that the employee had returned to work for his employer, had worked regularly and had not only received the same wages as before, but had received increases in wages from time to time. The full commission *15 was also aware of our holding in Southern Bell Telephone & Telegraph Co. v. Bell, supra, wherein we held that earnings subsequent to an injury were one of the factors to be considered by the deputy commissioner, but nothing said therein can be construed as holding that earnings after injury were to be the sole test of disability under the Workmen's Compensation Act.
In Southern Bell Telephone & Telegraph Co. v. Bell, supra, we further discussed the variables and factors considered in Ball v. Mann, supra, that may be involved in determining ability to compete in the labor market before and after a compensable non-scheduled injury and among other things we said:
"The difference in ability of a claimant to compete in the open labor market, before and after a compensable non-scheduled injury, is a proper means of determining the loss of earnings capacity only if in applying the test all factors which could bear on the claimant's ability to compete and earn are considered; these factors include the variables mentioned in Ball v. Mann, supra, and evidence of his ability to compete as measured by his earnings at the time the test is applied.
"And in determining his ability to compete in the open labor market, this ability is not to be measured in terms of whether he can perform only the same work being performed at the time of the injury but rather by his ability to earn wages in the same or any other type of work of which he is capable and qualified to perform."
Guided by doctrine of the Ball v. Mann and the Southern Bell cases, supra, the deputy commissioner enumerated the factors necessary to determine the loss of earning capacity by the employee in the case at bar. On the basis of these factors the deputy commissioner found that the employee suffered a 35% permanent partial disability of the body as a whole based upon the following factors: (1) Employee's age; (2) the fact that he is illiterate; (3) the fact that he knows no other work but dairy work and truck maintenance; (4) the urethral stricture; (5) chronic infection of the urethra and kidneys; (6) chronic prostatitis; (7) the effect of impotence on his personality. In addition to enumerating these factors, the deputy commissioner detailed very briefly the competent and substantial evidence which in his judgment supported these factors.
We have examined the testimony and we think there is ample competent evidence to support the findings and judgment of the deputy commissioner as to each of his findings. As to the contention that impotence is not a compensable injury under the Workmen's Compensation Act, it is sufficient to say that no such contention is made by employee. It was his contention that when impotency affects one's earning capacity it is then compensable. The testimony on this point was that of Dr. Knight, a competent M.D. and urologist, who testified in part that the employee was a simple man; he could not read or write, could not get pleasure from the hi-fi, stereo or the magazine. His pleasures are primarily eating, the company of his family and a normal sex life which he is deprived of. "It has affected him to the point that actually it has destroyed his self confidence. It has taken away what was to him his symbol of manhood and he no longer feels that he can go out and be with other men. In his present, protected environment  and I think he regards the Hood family like he regards his own relatives  he can still carry on a good day's work there; but if you put him out in a competitive field where there is pressure on him, I think he would fold up completely. I don't think he could carry on when there was pressure or competition because I think that his loss of sexual potency *16 has destroyed his self confidence to the point that he just doesn't have it."
On the basis of this testimony from Dr. Knight, the deputy commissioner found that the employee's earning capacity was affected by impotency. We think there was a good reason for the deputy commissioner's finding on this point.
Under the doctrine of Ball v. Mann and for other reasons the employee is entitled to compensation for the injuries he charges and has proven for "such period as the nature of the injury or the process of recovery may require." It was on the basis of these injuries that the deputy commissioner found that the employee suffered 35% permanent partial disability of the body as a whole. The 15% permanent partial disability of the ring finger has been settled and is no longer an issue in the case. We are concerned here solely with factors on which the deputy commissioner based the injury, which are contemplated in Ball v. Mann.
The second question presented is whether or not the deputy commissioner committed error as a matter of law in finding and holding that the employee would need or require medical care and treatment for the rest of his life.
The employee contends that this question requires a negative answer. He relies on the language of §§ 440.13(1) and 440.13 (3) (b), Florida Statutes, F.S.A., to support this contention. Section 440.13(1) is as follows:
"The employer shall furnish to the employee such remedial treatment, care, and attendance under the direction and supervision of a qualified physician or surgeon, or other recognized practitioner, nurse or hospital, and for such period, as the nature of the injury or the process of recovery may require * * *."
Section 440.13(3) (b) is as follows:
"All rights for remedial attention under this section including the right of the industrial commission to order additional treatment in excess of one thousand dollars, shall be barred unless a claim therefor is filed or the commission acts on its own initiative within two years after the date of the last remedial treatment furnished by the employer, or after the date of the last payment of compensation."
Employee's contention is that from the terms and clear implication of § 440.13(1) he is entitled to medical attention for such period as the nature of the injury or the process of recovery may require which the deputy commissioner found would be for the balance of his life.
Section 440.13(3) (b) requires that employee must file his claim within two years or if the commission does not file it or act on it of its own initiative within two years, it is barred. The latter provision of the statute evidently had much to do with employee's precipitating the instant suit at the time he did. He contends that under said statute the clear implication is that the industrial commission may toll the running of the statute of limitations. He further contends that such interpretation is in keeping with the intent and purpose of the Workmen's Compensation Act as construed by this court in Southern Bell Telephone & Telegraph Co. v. Pinkerman, Fla. 1950, 47 So.2d 547; Di Giorgio Fruit Corp. v. Pittman, Fla. 1950, 49 So.2d 600; Corbett v. General Engineering & Machinery Co., 1948, 160 Fla. 879, 37 So.2d 161, and Vol. 2, Larson, Workmen's Compensation Law, Section 61.14.
Contrary to the position taken by the employee, the employer comes up with numerous reasons why the employee should not recover. It first contends that the deputy commissioner committed error as a matter of law in finding that employee was entitled to lifetime medical care. The employer says that such procedure was never intended under Workmen's Compensation *17 Act unless an award is controverted by the employer. The employer also points out that it has responded to repeated requests for medical aid to the employee and has never refused to give him medical aid when called on. The employer further contends that the Workmen's Compensation Act is a contract when entered into by the state, the employer, the employee and the carrier as of the date of the accident and that the employee has not proceeded as the said act requires, § 440.19 (1) (a), Florida Statutes, F.S.A. The employer advances other contentions which we do not discuss.
In response to the contention of employee with reference to statute of limitations being raised against him, it is pertinent to point out that from the terms of the statutes quoted and relied on in addition to provisions of § 440.19, it does not appear at this time that the employer is in position to raise the defense they contemplate so it becomes unnecessary to mention them.
In entering judgment for the balance of his [employee's] life the deputy commissioner may have been unfortunate in his choice of terminology or he may have indulged a sample of what the semanticists elect to call the "tyranny of words"; or at least it would have been more appropriate for the judgment to follow the terms of the statute  "for such period, as the nature of the injury or the process of recovery may require."
The petition for certiorari is accordingly granted and the order of the full commission is quashed, the order of the deputy commissioner is reinstated with directions to the deputy commissioner to re-examine the case and amend his award by the rule and as directed in this opinion.
ROBERTS, C.J., and DREW and O'CONNELL, JJ., concur.
THOMAS, J., dissents.