Carlos and Jacqueline Marcello [1] v. Commissioner. Marcello v. Comm'r
Docket Nos. 93913, 2653-62, 2654-62, 2380-63.
United States Tax Court
T.C. Memo 1964-299; 1964 Tax Ct. Memo LEXIS 40; 23 T.C.M. (CCH) 1847; T.C.M. (RIA) 64299; November 18, 1964
*40 deQuincy V. Sutton, for the petitioners. Robert S. Leigh, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion *41 DAWSON, Judge: Respondent determined the following deficiencies and additions to income taxes of the petitioners: Docket
Additions to Tax, I.R.C. 1954
Petitioner
Number
Year
Deficiency
Sec.
Sec.
6651(a)
6653(a)
Carlos and
93913
1956
$14,142.19
Jacqueline
Marcello
1957
27,333.19
1958
49,446.49
1959
30,840.86
$3,084.09
Vincent and Sadie
2653-62
1958
23,522.36
$1,176.12
Marcello
1959
13,735.55
686.78
Salvador J.
2654-62
1958
19,786.79
989.34
Marcello
Salvador J.
2380-63
1959
4,399.08
219.95
Marcello Petitioners, Carlos Marcello, Jacqueline Marcello, Vincent Marcello, Sadie Marcello, and Salvador Marcello, will be sometimes identified by their given names. The parties made certain concessions during the trial and on brief which will be given effect in the *42 Rule 50 computations. The issues remaining for decision are: (1) Whether petitioners realized taxable gain in 1959 with respect to the sale of an undivided interest in inherited real estate and, if so, in what amount; (2) whether Carlos and Vincent understated their distributive shares of the net income of Jefferson Music Company, a partnership, for the years 1956, 1957, 1958, and 1959 with respect to Carlos and 1958 and 1959 with respect to Vincent; (3) whether Carlos and Salvador understated their distributive shares of the net income of the Town and Country Motel, a partnership for the years 1956, 1957, 1958, and 1959 with respect to Carlos and for the years 1958 and 1959 with respect to Salvador; (4) whether Carlos and Jacqueline are entitled to treat a gain realized upon the sale of their personal residence under the provisions of section 1034, Internal Revenue Code of 1954; [2] (5) whether Carlos and Jacqueline are entitled to certain itemized deductions for the years 1956 through 1959 for unreimbursed expenses, interest payments, attorney fees, bad debts, and depreciation on building improvements; (6) whether Vincent and Sadie are entitled to certain *43 itemized deductions for the years 1958 and 1959 for unreimbursed business expenses; (7) whether Salvador is entitled to certain itemized deductions for the years 1958 and 1959 for business expenses, charitable contributions, and interest; (8) whether Carlos and Jacqueline are liable for an addition to tax under the provisions of section 6651(a) for 1959; and (9) whether Vincent and Sadie and Salvador are liable for additions to tax under the provisions of section 6653(a) for the years 1958 and 1959. Findings of Fact Some of the facts have been stipulated and are so found. Carlos and Jacqueline, husband and wife, reside at 577 Woodvine, Metairie, Louisiana. Vincent and Sadie, husband and wife, reside at 28 Smithvoy Drive, Gretna, Louisiana. Petitioners filed their joint income tax returns for the years involved with the district director of internal revenue at New Orleans. Salvador resides at 527 Jefferson Park Avenue, Metairie, Louisiana, and he filed his individual income tax returns for 1958 and 1959 with the same office. Issue 1 Succession Property On July 1, 1955, Louisa Farrugia Marcello (hereinafter *44 called Louisa), the widow of Joseph Marcello, Sr., and her nine children filed a petition in the District Court in and for the Parish of Jefferson, State of Louisiana, in connection with succession of the property of Joseph Marcello, Sr., deceased. That court ordered that Louisa be recognized as the surviving spouse in the community of the deceased, Joseph Marcello, Sr., entitled as such to the ownership of one-half or nine-eighteenths of the property left by the deceased and to a usufruct interest in the other one-half or nine-eighteenths of the decedent's property. The court also ordered that the nine children be recognized as the sole heirs of their deceased father and that each child was entitled to the ownership of an undivided one-eighteenth interest in the property left by the deceased subject to the usufruct vested in the mother. Louisa was born on February 6, 1893. Joseph Marcello, Sr., died in 1952. Included in the inheritance was a certain parcel of land, consisting of approximately 183 acres, designated as Tracts Nos. 9 and 10, Oakdale, Subdivision, Section "C," Jefferson Parish, State of Louisiana (hereinafter called Tract C). Tract C was valued for estate purposes at *45 $40,000. On December 26, 1958, Tract C was sold in nine separate parcels of approximately 20.333 acres each by Louisa and the nine children. The purchasers were nine newly organized corporations in which the sellers had no interest. The names of the purchasing corporation were Gems, Inc., Pearl Lands, Inc., Amethyst Lands, Inc., Emerald Lands, Inc., Sapphire Lands, Inc., Garnet Lands, Inc., Topaz Lands, Inc., Ruby Lands, Inc., and Moonlight, Inc. Each of these corporations, organized under the laws of the State of Louisiana, had been initially capitalized for $10,000. After the sales, James J. Culotta, a residential real estate developer and builder and owner of all the stock of the nine corporations, transferred 50 percent of the shares in each corporation to Joseph Connolly, who had participated in prior residential construction developments with Culotta. James J. Culotta transferred the 50 percent stock interests in the nine corporations to Joseph Connolly on the promise and understanding that Joseph Connolly would be responsible for raising the necessary financing for the proposed residential development of Tract C. No other consideration was exchanged. Another development *46 project in which James J. Culotta and Joseph Connolly had joint interests about the time of the sale of Tract C to the nine corporations had failed. Each of the newly organized corporations gave, as total consideration, a negotiable promissory note, dated December 26, 1958, in the principal amount of $111,111.11. Each note was secured by special mortgage and vendor's lien in the appropriate deed of sale for the respective 20.333 acres conveyed to such corporation. Each note was signed in the name of the appropriate corporation by "James J. Culotta, President." Each note provided that payments were to be made in ten annual installments of $11,111.11 commencing on December 26, 1959. Each note also provided that payments would be made by the respective corporation to the order of Bearer, $111,111.11, for value received, with interest payable monthly at the rate of 6 percent per annum until paid. The notes also included provisions as to the makers and endorsers' waiver of presentment for payment, demand notice of non-payment and protest. The notes further provide for non-waiver of rights by any delay in the exercise of such rights. The notes were in default from the due date of the *47 first payment with respect to principal and interest. Except in one instance, which will be described hereinafter, no payment has been made on these notes. Each note also bears the personal endorsement of James J. Culotta. The acts or deeds of credit sale were signed for the grantors by Carlos J. Marcello, individually, and as agent and attorney-in-fact for Louisa, Vincent J. Marcello, Peter J. Marcello, Pascal J. Marcello, Joseph Marcello, Jr., Anthony J. Marcello, Salvador J. Marcello, Mary M. Loria, and Rose M. Badalamenti. The power of attorney was dated December 22, 1958, and it appointed Carlos J. Marcello as the true and lawful agent and attorney-in-fact for the mother and the other eight children. Carlos J. Marcello was given the power to sell and deliver, with all legal warranties, Tract C to any person or persons, firms, or corporation or corporations, for such price and on such terms and conditions as he might deem fit and proper. Each of the deeds of sale includes a provision that the purchaser agrees, in the event the promissory note is not paid at maturity, that it shall be lawful for the vendor, or any holder or holders of the note, to cause the property to be seized *48 and sold without demand or service of notice of demand for payment or of notice of procedure and without appraisement, to the highest bidder, payable in cash; and that the purchaser confesses judgment in favor of the vendor or any future holder or holders of the note. Each of the acts of sale includes the provision that partial release of any one or more of the lots into which the property will be subdivided will be granted by the vendors upon payment towards the balance due on the above-described note of a sum proportionate to the ratio which the lot or lots sought to be released shall bear to the total number of lots into which the property is to be subdivided. Each act also provides that in order to facilitate the development of the property, or for the construction of streets and/or offsite improvements, the vendors will do all and whatsoever may be necessary in order to subordinate the vendor's lien and mortgage therein granted to any mortgage and/or building contract made by the purchaser for the purpose of construction financing of such development. On November 4, 1959, 10 months after the sale of Tract C, the nine notes were pledged on behalf of the Marcello family and *49 their business associates as additional security for a $540,000 indebtedness. The notes were pledged as cumulative collateral for the loan. Other collateral consisted of (1) a first mortgage on certain motel property; (2) second and third mortgages on other property previously mortgaged to the same person for a prior loan; and (3) certain shares of stock of a motel corporation in which the Marcello family held interests. The pledges made no attempt to segregate the security held between the loan of $540,000 and the previous loans made to the Marcello family or their business associates. On October 16, 1961, Gems, Inc., sold for $110,000 in cash, two tracts of land consisting of 5.72 acres and 6.53 acres out of its 20.333 acre tract, to the Roman Catholic Church of the Diocese of New Orleans. A mortgage release covering approximately 12 acres of the Gems, Inc., lands was executed on behalf of the Marcello heirs and a release of the pledge to the extent of $71,172.50 was obtained from the pledges of the Gems, Inc., note. On May 28, 1962, a Form 1041, United States Fiduciary Income Tax Return, in the name of Estate of Joseph Marcello, deceased, signed by Carlos Marcello, was filed *50 for the year 1961 with the district director of internal revenue, New Orleans, Louisiana, reporting the following: Property sold 12-26-58 - Credit Deed, taxpayer
estate received no money in transaction until
1961.
Proceeds of sale received in 1961
$71,172.50
Less
Pro-rata valuation - Cost
12,500.00
Other Costs - Legal & Acctg.
2,000.00
Net Reportable
$56,672.50
Total acreage - approximately 183 acres
Market value - date of death $454 per acre
Total market value - date of death - $12,500
Estate elects to report on installment basis.
Property sold on Credit Deed 12-26-58 to
corporations listed below: Gems, Inc.
$111,111.11
Pearl Lands, Inc.
111,111.11
Amethyst Lands, Inc.
111,111.11
Emerald Lands, Inc.
111,111.11
Sapphire Lands, Inc.
111,111.11
Garnet Lands, Inc.
111,111.11
Topaz Lands, Inc.
111,111.11
Ruby Lands, Inc.
111,111.11
Moonlight, Inc.
111,111.11
$999,999.99
On July 23, 1963, the deeds of sale were amended nunc pro tunc by the nine vendee corporations and Carlos. J. Marcello acting as agent and attorney-in-fact for the Marcello family. In the amendments the parties declared that it was their *51 intention at the time the nine sales were made that there be reserved to the vendors the oil, gas, and other mineral rights in the property conveyed in the nine sales, just as though the lands conveyed had been conveyed in one deed. The vendors and vendees declared that the reservation of mineral rights would not be effective as to the properties which were sold by Gems, Inc., to the Roman Catholic Church of the Diocese of New Orleans. Three qualified experts testified during the course of the hearing with regard to the valuation of Tract C - two on behalf of petitioner and one on behalf of respondent. Their respective conclusions as to the value of the land were based in part on a visual examination of the property, an examination of the official Parish records in regard to title and zoning, an examination of comparable properties and an examination of the sales of comparable property. The value of Tract C, based in part on the opinion of these experts, is set forth below. Petitioners did not report the sale of their interest in Tract C on their Federal income tax return for the year 1958. No election was made on the return pursuant to section 453, Internal Revenue Code *52 of 1954, and the regulations relating thereto, to treat the gains on the sale of the properties under the installment method of accounting. In his notices of deficiencies respondent made the following adjustment: It has been determined that you realized a net long-term capital gain from the sale or exchange of capital assets in the amount of $53,333.33, which you failed to take into account in the computation of your taxable income. It has been further determined that you are entitled to a deduction in the amount of $26,666.66 computed in accordance with the provisions of section 1202 of the Internal Revenue Code of 1954. Petitioners' undivided interest in the inherited property was sold in 1958. The fair market value of the land known as Tract C on December 26, 1958, was $1,800 per acre, or a total value of $329,395 for 183 acres. The fair market value of each of the nine negotiable notes of the nine vendee corporations on December 26, 1958, was equal to 33 1/3 percent of its stated face value. Issue 2 Jefferson Music Company During the years in issue Jefferson Music Company (hereinafter sometimes called Jefferson) owned and operated various *53 types of coin machines, including slot machines and music boxes, at numerous locations in the New Orleans area. Jefferson shared the profits derived from the machines with the proprietors of the establishments where its machines were installed. Jefferson filed information tax returns for each of the calendar years 1946 to 1959 on United States Partnership Returns of Income, Form 1065, on the cash basis of accounting, with the collector of internal revenue, or the district director of internal revenue, New Orleans, Louisiana. The partnership returns of Jefferson showed a distribution of 50 percent to Vincent and 50 percent to Carlos, respectively, for each of the years 1946 through 1959. The returns were signed by Carlos for the years 1946 and 1947, by Vincent for 1948 and 1949, by Carlos for 1950 and 1951, and by Vincent for 1952 through 1959. In this proceeding respondent has increased the distributive shares of Carlos and Jacqueline from the net income of Jefferson for the years 1956, 1957, 1958, and 1959 by the respective amounts of $20,287.50, $26,207.81, $24,146.38, and $30,244.78, resulting from the following adjustments: Additional Income and
Unallowable Deductions
of Jefferson Music Co.
1956
1957
1958
1959
Business promotion expense
$ 7,035.84
$10,147.51
$ 9,685.52
$10,149.31
Misc. expenses
1,202.20
1,403.90
1,693.47
872.33
Route expense
1,611.68
1,694.24
1,754.16
1,864.04
Losses on sale of equipment
19,906.34
10,222.26
27,344.98
28,003.57
Losses on sales of vehicles
1,613.99
2,013.00
Depreciation - old equipment
3,781.53
10,610.28
Bad debts expense
5,774.97
13.64
Attorney fees
1,630.00
1,630.00
5,411.80
Accountant fee
3,000.00
Vehicle maintenance
1,237.62
Travel expense
590.58
Trial expense
10,198.83
Total Increases
$35,151.58
$43,496.18
$44,729.39
$57,090.46
Less additional depreciation
4,976.59
2,555.56
6,836.24
7,000.89
Net Increase
$30,174.99
$40,940.62
$37,893.15
$50,089.57
Shares of Carlos Marcello of
net in-
creases - 50%
$15,087.50
$20,470.31
$18,946.58
$25,044.78
Additional Income
5,200.00
5,200.00
5,200.00
5,200.00
Gain on sale
537.50
$20,287.50
$26,207.81
$24,146.58
$30,244.78
*54 Respondent has also increased the distributive shares of Vincent and Sadie with respect to Vincent's share of the net income of Jefferson for the years 1958 and 1959 by the respective amounts of $18,946.58 and $25,044.78. The schedule of depreciation of machines attached to the 1955 partnership return of Jefferson reflects the following: Kind of Property
Cost
Date Acq.
Life
Depre. this Yr.
Music Boxes
$82,354.89
1951
5 years
$13,766.74
United Rio
2,870.20
1953
3 years
192.00
Palm Spring
8,710.00
1953
3 years
2,895.00
Ice Frolic
1,160.00
1953
3 years
386.00
United Mexico
1,130.00
1953
3 years
186.00
Bally Surf King
8,205.00
1953
3 years
2,730.00
Clover Ball
1,375.000
1953
3 years
275.00
Fun Machine Variety
575.00
1953
3 years
32.00
Triple Draw Bell
1,905.00
1953
3 years
398.14
Bally Big Time
5,100.00
1953
3 years
1,300.00
Bowling Machine
1,344.00
1953
3 years
282.00
Buckley
105.00
1953
5 years
30.60
Bally Gayety
4,950.00
1953
5 years
1,700.00
United Manhattan
284.00
1953
5 years
98.00
Atlantic City
4,160.00
1953
5 years
631.48
Saddle Turf
140.00
1953
5 years
48.00
Buckley Long Shot
926.00
1953
5 years
440.00
Triple Play
3,145.00
1953
5 years
1,127.82
Bally Gay Time
2,485.00
1953
5 years
500.00
United Dixie
1,220.00
1953
5 years
352.00
William King
550.00
1953
5 years
42.00
Variety
5,980.00
1953
3 years
2,585.00
Daily Double
1,750.00
1953
3 years
350.00
Track Odds
1,850.00
1953
5 years
370.00
Bally Beach Club
3,920.00
1953
5 years
1,098.50
Winter Brook
700.00
1953
5 years
233.10
Yacht Club
6,380.00
1953
5 years
579.00
Total
$27,835.90 *
Old equipment
3,781.53
Total
$31,617.43 *
*55 The schedule of depreciation attached to the partnership return of income of Jefferson for the year 1956 reflects the following: Kind of Property
Cost
Date Acq.
Life
Depre. this Yr.
Music Box
$92,807.05
1951
5 years
$16,744.51
Palm Spring
2,455.00
1954
3 years
817.00
Bally Surf Club
5,265.00
1954
3 years
1,755.00
Gum Machine
495.00
1954
3 years
32.00
Clover Bell
1,375.00
1954
3 years
65.95
Variety
600.00
1954
3 years
400.00
Big League
285.00
1954
3 years
57.00
Bally Big Time
600.00
1954
3 years
550.00
Bowling Machine
2,108.53
1954
3 years
430.00
Bally Gayety
1,220.00
1954
5 years
2,400.00
United Manhattan
510.00
1953
5 years
170.00
Atlantic City
520.00
1953
5 years
462.72
Buckley
4,240.00
1953
5 years
870.00
United Triple
2,255.72
1953
5 years
1,012.88
Bally Gay Time
2,220.00
1953
5 years
1,310.00
United Dixie
4,513.45
1953
5 years
2,851.00
Wm. King Swat
745.72
1953
5 years
240.00
Buckley Daily Double
3,600.00
1953
5 years
380.00
Buckley Track
2,050.00
1953
5 years
370.00
Bally Beach
560.00
1953
5 years
313.05
Winterbrook
2,700.00
1953
5 years
[*] Yacht Club
1,160.00
1953
3 years
[*] United Club
189.52
1956
3 years
189.52
Broadway
1,220.00
1956
3 years
380.00
Caravan
2,301.03
1956
3 years
630.00
Night Club
1,832.31
1956
3 years
640.00
United Stand
1,150.51
1956
3 years
300.00
Evans Diamond
400.00
1956
3 years
60.00
Universal Bell
400.00
1956
3 years
120.00
Big Show
15,564.75
1956
3 years
2,354.00
Double Header
630.77
1956
3 years
100.00
Starlet
4,519.66
1956
3 years
1,600.00
Total
$38,264.93
Old equipment
3,781.53
Total
42,046.46
*56 There is no schedule of depreciation of machines attached to the partnership information return of Jefferson for the year 1957. The schedule of depreciation of machines and equipment attached to the partnership information return of Jefferson for the year 1958 reflects the following: Date
Prior
Kind of Property
Cost
Acquired
Rate
Reserve
Machinery & Equip-Coin
$258,497.88
Various
25%
$72,542.93
1958
Total
Kind of Property
Depre.
Reserve
Net Book
Machinery & Equip-Coin
$64,624.47
$137,167.40
$121,300.48
In disallowing the claimed losses on sales of equipment claimed by Jefferson, respondent determined that assets were traded in on new assets in nontaxable exchanges, and the respondent allowed depreciation on the additional capitalized cost of the net assets in the following amounts: 1956
1957
1958
1959
Capitalization of alleged
losses on disposition of old
equipment traded in on new
$19,906.34
$10,222.26
$27,344.98
$28,003.57
equipment
Allowable depreciation 25%
4,976.59
2,555.56
6,836.24
7,000.89
During the years 1956, 1957, 1958 and 1959 Jefferson incurred the *57 following expenses as business promotion expenses, miscellaneous business expenses and route expenses: Promotion
Miscellaneous
Route
1956
$6,000.00
$1,202.20
$1,611.68
1957
9,000.00
1,403.90
1,694.24
1958
8,000.00
1,693.47
1,754.16
1959
9,000.00
872.35
1,864.04
The books and records of Jefferson reflect the following information concerning losses allegedly sustained on the disposition of vehicles in 1956 and 1957: Prior
Net Book
Sales
Net Gain
Year - 1956
Cost
Dep.
Value
Price
(Loss)
1955 DeSoto
$2,153.51
$ 89.72
$2,163.79
$1,700.00
$ (363.79)
Fireflite
1956 Chev. Spt.
2,096.00
0
2,096.00
2,087.00
(9.00)
Coupe
1955 Chev. Belair
2,369.00
450.00
1,919.00
1,366.00
(553.00)
1954 Chev. 1/2 T.
1,311.60
328.00
983.60
572.00
(411.60)
Pickup
1954 Chev. 1/2 T.
1,311.60
328.00
983.60
572.00
(411.60)
Pickup
Willys Jeep
165.00
165.00
300.00
- 135.00
Total
[1,613.99)
Year - 1957
1956 Olds. 98
$4,070.00
$1,000.00
$3,070.00
$1,800.00
[1,270.00)
Holiday
1956 1/2 T.
1,522.00
95.00
1,427.00
1,093.00
(334.00)
Pickup
1956 1/2 T.
1,522.00
95.00
1,427.00
1,093.00
(334.00)
Pickup
1958 Impala
3,075.00
0
3,075.00
3,000.00
(75.00)
Total
[2,013.00)
*58 During the years 1957 and 1958 Jefferson deducted $5,774.99 and $13.64, respectively, as losses on bad debts. Jefferson actually sustained losses on debts that became worthless in 1957 and 1958 in the following amounts: 1957
$5,021.99
1958
13.64
During the year 1959 Jefferson incurred and paid ordinary and necessary business travel expenses in the amount of $300. During the years 1957 and 1959 Jefferson incurred and paid attorney fees of $1,630 and $5,411.80, respectively. During the year 1958 Jefferson incurred and paid $750 for vehicle maintenance as an ordinary and necessary cost of doing business. During the year 1959 Jefferson claimed $10,198.83 as a deduction on its 1959 partnership return for trial expense. The disbursements in 1959 respecting this deduction were as follows: Date
To Whom Paid
Amount
10/12
U.S. Marshal
$ 50.00
10/12
John Davis
253.60
10/14
Leon Poirier
300.00
10/14
Jacob Amato
253.60
10/14
Leo McCune
253.60
10/17
Capital Airlines
148.62
10/20
Geo. Davis
200.00
10/21
John Davis
200.00
10/22
Delta Airlines
74.31
10/23
Eastern Airlines
56.93
10/24
Ed Hovers
250.00
10/26
Frank Mader
200.00
10/26
Geo. Davis
575.00
11/ 6
Leo McCune
200.00
12/ 1
Marriott Hotel
944.29
12/ 1
The Mayflower Hotel
58.44
12/ 1
Geo. Davis
497.00
11/ 3
Julian Freret
353.60
11/ 3
Cash
148.62
12/ 2
Wasserman & Carliner
$ 2,500.00
12/10
American Express
164.22
12/15
Wasserman & Carliner
1,250.00
12/31
Geo. Davis
1,267.00
Total
$10,198.83
*59 The expenditures totaling $10,198.83 were made in connection with a criminal action brought by the United States against Vincent resulting in a mistrial in 1959 in which Vincent was neither adjudged guilty nor acquitted. As a result of a second trial in March 1960, Vincent was adjudged not guilty and discharged. On August 26, 1959, an indictment was filed in the United States District Court for the District of Columbia, by the United States, charging: COUNT ONE That on or about August 28, 1957, within the District of Columbia, Vincent J. Marcello, doing business as Jefferson Music Company, in a matter within the jurisdiction of the Federal Communications Commission, an agency of the United States, did unlawfully, knowingly and willfully falsify, conceal and cover up by trick, scheme and device material facts in a document filed with said Commission, namely, an Application for Citizens Radio Station Construction Permit and License (FCC Form 505-1, Rev. 12-52), in that he did falsely identify the applicant as "Vincent J. Marcello, doing business as Jefferson Music Co." when in fact he then and there knew that Jefferson Music Company was a partnership and that his brother Carlos *60 Marcello was a partner in Jefferson Music Company. In violation of Section 1001, Title 18, United States Code. The Grand Jury Further Charges: COUNT TWO That on or about August 28, 1957, within the District of Columbia, Vincent J. Marcello, doing business as Jefferson Music Company, in a matter within the jurisdiction of the Federal Communications Commission, an agency of the United States, did unlawfully, willfully and knowingly make, use and file and cause to be made, used and filed with said Commission a false writing and document, namely an application for Citizens Radio Station Construction Permit and License (FCC Form 505-1, Rev. 12-52), knowing the same to contain a false, fictitious and fraudulent statement and representation of a material fact in the Citizenship Certification contained therein, to wit, that each partner in Jefferson Music Company was then and there a citizen of the United States, whereas the said Vincent J. Marcello well knew, Jefferson Music Company was then and there a partnership in which his brother Carlos Marcello, who was then and there not a citizen of the United States, was a partner. In violation of Section 1001, Title 18, United States Code, *61 The Grand Jury Further Charges: COUNT THREE That on or about December 6, 1957, within the District of Columbia, Vincent J. Marcello, doing business as Jefferson Music Company, in a matter within the jurisdiction of the Federal Communications Commission, an agency of the United States, did unlawfully, knowingly and willfully falsify, conceal and cover up by trick, scheme and device material facts in a document filed with said Commission, namely an Application for Citizens Radio Station Construction Permit and License (FCC Form 505-1, Rev. 12-52), in that he did falsely identify the applicant as "Vincent J. Marcello, doing business as Jefferson Music Co." when in fact he then and there knew that Jefferson Music Company was a partnership and that his brother Carlos Marcello was a partner in Jefferson Music Company. In violation of Section 1001, Title 18, United States Code, The Grand Jury Further Charges: COUNT FOUR That on or about December 6, 1957, within the District of Columbia, Vincent J. Marcello, doing business as Jefferson Music Company, in a matter within the jurisdiction of the Federal Communications Commission, an agency of the United States, did unlawfully, willfully *62 and knowingly make, use and file and cause to be made, used and filed with said Commission a false writing and document, namely, an Application for Citizens Radio Station Construction Permit and License (FCC Form 505-1, Rev. 12-52), knowing the same to contain a false, fictitious and fraudulent statement and representation of a material fact in the Citizenship Certification contained therein, to wit, that each partner in Jefferson Music Company was then and there a citizen of the United States, whereas the said Vincent J. Marcello well knew, Jefferson Music Company was then and there a partnership in which his brother Carlos Marcello, who was then and there not a citizen of the United States, was a partner. In violation of Section 1001, Title 18, United States Code, The Grand Jury Further Charges: COUNT FIVE That on or about December 30, 1957, within the District of Columbia, Vincent J. Marcello, doing business as Jefferson Music Company, in a matter within the jurisdiction of the Federal Communications Commission, an agency of the United States, did unlawfully, willfully and knowingly make, use and file and cause to be made, used and filed with the said Commission a false writing *63 and document, namely a Description of Proposed Antenna Structure (a), (FCC Form 401-A), knowing the same to contain a false, fictitious and fraudulent statement and representation of a material fact, to wit, that he Vincent J. Marcello, doing business as Jefferson Music Company, was an Individual Applicant whereas the said Vincent J. Marcello well knew, Jeffrson Music Company was then and there a partnership in which he, Vincent J. Marcello, and his brother Carlos Marcello, were then and there partners. In violation of Section 1001, Title 18, United States Code. On November 4, 1959, after proceedings in the criminal trial, the jury advised they were unable to agree upon a verdict and were discharged from further consideration in the case and the case was passed. In further proceedings and trial in March 1960, the alternate jury found the defendant not guilty as to each of the Counts 1, 2, 3, 4, and 5, and Vincent was discharged from further consideration in the case. Issue 3 Town and Country Motel During the years in issue Town and Country Motel (hereinafter called Town and Country), Jefferson Parish, Louisiana, was operated by a partnership composed of Carlos, Salvador, *64 Frank Occhipinti, and Rosario F. (Roy) Occhipinti, as partners, each being entitled to share in profits and losses to the extent of 25 percent. The partnership kept its books and filed its United States partnership returns on the basis of a fiscal year ending January 31. Increases in the distributive shares of Carlos and Salvador determined by respondent cover items of the partnership for eleven months of the preceding calendar year and one month of the subsequent calendar year for each of the years in which increases of distributive shares were redetermined. It is assumed that respondent has permitted the partnership year to end at a different time from that of its partners. In this proceeding respondent increased the distributive shares of Carlos and Jacqueline of the net income of Town and Country for the taxable years 1956, 1957, 1958, and 1959 by the respective amounts of $2,647.96, $4,466.99, $5,459.13, and $2,926.77, resulting from the following adjustments: Town & Country Motel Unallow-
FY Ended
FY Ended
FY Ended
FY Ended
able Deductions
1/31/56
1/31/57
1/31/58
1/31/59
Traveling and entertainment
$ 1,801.67
$ 260.00
Miscellaneous expense
$ 2,194.80
1,470.86
2,386.10
Commission expense
2,000.00
Interest expense
$ 7,581.37
8,644.22
12,444.42
5,055.18
Sales tax
3,010.44
5,028.91
6,119.54
4,005.79
Totals
$10,591.81
$17,867.93
$21,836.49
$11,707.07
25%
2,647.96
4,466.99
5,459.13
2,926.77
*65 The respondent has also increased the distributive shares of Salvador for the years 1958 and 1959 of the net income of Town and Country by the respective amounts of $5,459.12 and $3,791.29, computed as shown above, plus the additional amount of $864.52 resulting from the disallowance of a certain depreciation deduction in the partnership's fiscal year ended January 31, 1959. At the trial respondent conceded that Town and Country is entitled to the claimed deductions for sales taxes insofar as the cases of Carlos and Jacqueline and Salvador are concerned. Petitioners' counsel conceded that respondent properly disallowed a deduction for depreciation in 1959 to the extent of $595 with respect tosalvador. During its fiscal years ending January 31, 1958 and 1959, Town and Country disbursed $1,801.67 and $260, respectively, which amounts were charged on its books as travel and entertainment expenses. One of the partners of Town and Country did make certain trips to Shreveport, Louisiana, and other cities in connection with the acquisition of motel property. Subsequently, two of the partners of Town and Country other than petitioners did acquire stock in their names in a corporation, *66 Desert Inn, Inc., which corporation built and owned a motel at Bossier City, Louisiana. The Bossier City motel is not part of the business of the partnership, Town and Country, and the travel expenses were not ordinary and/or necessary to its business. Town and Country incurred and paid miscellaneous business expenses of $1,800, $1,200 and $1,900 for the taxable years ending January 31, 1957 through 1959, respectively. During the taxable year ending January 31, 1959, Town and Country incurred and paid commission expenses of $2,000 for ordinary and necessary services rendered to the partnership in connection with a mortgage loan application. Town and Country borrowed $115,000 in 1956 for motel construction, with interest calculated at a rate of 6 percent per annum payable monthly. The partnership also borrowed $68,894.96 in 1956 for furnishings for the motel. This note was payable in 24 monthly payments with interest calculated at an 8 percent rate. Certain other funds were borrowed during the years here involved where the interest paid was deducted by the partnership. Some of these loans, however, were not shown to be related to the business of Town and Country. Town and Country *67 incurred interest expenses of $5,000 in each of the taxable years ending January 31, 1956, 1957, 1958, and 1959. Issue 4 Gain on Sale of Personal Residence - Carlos and Jacqueline On July 31, 1946, Carlos purchased a residence at 800 Barataria Boulevard, Marrero, Jefferson Parish, Louisiana, for a consideration of $42,500. The 1956 and 1957 Federal income tax returns of Carlos and Jacqueline reflect that Carlos and his family occupied this residence in those years. Carlos and Jacqueline sold their Barataria Boulevard residence in 1958. In a schedule attached to their joint income tax return for the year 1958, the sale of the residence was reported as follows: CARLOS & JACQUELINE MARCELLO
1958
SALE OF RESIDENCE
Sold to: Anthony Ragusa, 12/5/58
(Net)
$ 84,963.85
House note
17,000.00
Total Selling Price
$101,963.85 [1]
Cost of Residence
$42,500.00
Improvements
10,000.00
$ 52,500.00
An Act of Sale dated March 31, 1958, reflects that Louisa purchased in her name a residence at 577 Woodvine Street, *68 Metaire, Louisiana, for $110,000, all of which is shown as paid. At the time of this purchase, Louisa executed the mortgage on the Woodvine property in favor of W. R. White, securing her promissory note in the amount of $73,000 payable to W. R. White. In a notarized and witnessed affidavit sworn to on March 31, 1958, Louisa deposed that: The title to the Woodvine residence property was placed in her name for convenience only; the property was bought by and for the account of Carlos, by whom the whole of the purchase price was paid; she agreed to bind herself, her heirs, executors, and administrators to convey said property by proper title and due form of law, to said Carlos, his heirs, executors, and assigns whenever required to do so; and, in making said conveyance, no price or consideration is to be paid though one might be stipulated and declared to be paid in the deed of conveyance. A passbook of The First National Bank of Jefferson carried in the name of Louisa shows periodic payments of principal and interest on the mortgage in 1958, 1959 and 1960. The periodic payments were actually made by Carlos and Jacqueline out of their funds and the interest paid was as follows: 1958
$2,428.61
1959
3,372.75
*69 Issue 5 Disallowed Deductions Carlos and Jacqueline The respondent has further disallowed certain deductions from income claimed on the joint income tax returns of Carlos and Jacqueline as follows: 1956
1957
1958
1959
Depreciation on automobiles
$1,375.00
$ 1,375.00
$ 1,625.00
$ 1,125.00
Gas, oil, wash, grease
756.80
925.30
840.00
Travel
1,800.00
2,400.00
2,400.00
350.00
Insurance
175.40
175.25
185.75
Misc. trips, etc.
650.00
Misc. trips, business
600.00
promotion
Car repairs
1,107.91
Meals, tips, rooms, etc.
1,367.00
Attorney fees
5,469.87
3,238.40
Interest
2,428.61
3,372.75
Loss from worthlessness of
note of S. Rod-
riquez
1,600.00
Depreciation on Old and New
Southport
Club improvements
2,799.63
Totals
$4,107.20
$10,995.42
$11,317.76
$11,722.29 With regard to the claimed deductions for depreciation on automobiles, gas, oil, wash, grease, insurance, and car repairs, the only evidence offered was that Carlos used his automobile from time to time for business purposes. Carlos maintained another automobile for the use of his family. No further evidence was submitted *70 in regard to any of these charged deductions. No testimony, receipts, cancelled checks, invoices, books and records or other evidence of payment was introduced on behalf of Carlos and Jacqueline at the trial concerning the alleged deductions for travel, miscellaneous tips, etc., miscellaneous trips, business promotion, meals, tips, rooms, etc., expense, and loss from worthlessness of the note. In 1957 and 1958, Carlos paid respective amounts of $2,361.87 and $2,238.40 to Jack Wasserman for legal fees in connection with pending proceedings before the Commission of Naturalization and Immigration relating to the deportation of Carlos. In 1957 Carlos paid $3,108 to Dean Andrews, an attorney, but no evidence was offered concerning the purpose of the expenditures. In 1958 Carlos paid $1,000 to Albert Koorie, an attorney, for services rendered in connection with Carlos' tax matters. In the year 1959 Carlos and Jacqueline reported rental income in the amount of $2,400 and $975 from property known as Old Southport and New Southport, respectively. Petitioners' claim for additional depreciation of $2,799.63 in 1959 in connection with these properties was denied by respondent. Issue *71 6 Disallowed Deductions Vincent and Sadie Respondent disallowed claimed deductions of Vincent and Sadie in 1958 and 1959 as follows: 1958
1959
Sales taxes
$900
Unreimbursed travel and
entertainment expenses
360
$360
Except for the amount of $856.86 conceded by respondent to be an allowable deduction for state sales taxes in 1958, petitioners Vincent and Sadie have failed to offer any evidence to show that they incurred unreimbursed business travel and entertainment expenses during the years involved. Issue 7 Disallowed Deductions Salvador Petitioner Salvador made cash donations of $250 and $260 for the years 1958 and 1959, respectively, to the Catholic Church. He also made cash donations to the Red Cross, United Fund, and Boy Scouts during the years 1958 and 1959 in the total amount of $100 per year. The latter donations were made whenever Salvador was solicited at his home or office. Salvador incurred and paid the following amounts for the following items during the years in issue: 1958
1959
Interest (mortgage)
$814.36
$627.41
Sales taxes
120.00
120.00
Gasoline tax
70.00
70.00
License fees
3.
$0.h3.00
Unreimbursed travel and
entertainment expenses
300.00
*72 The payments of interest were paid by Salvador to Guaranty Homestead Associates, the holder of a mortgage on Salvador's home. The mortgage was actually shown on the association's books as a joint indebtedness of Salvador and Anthony, but the home was used exclusively by Salvador after his brother's family moved into their own home in 1958. Opinion Issue 1 Succession Property This issue is identical to Issue 2 (Succession Property) decided in the case of Joseph Marcello, Jr., 43 T.C. - (Nov. 13, 1964), wherein we held that the taxpayer realized a long-term capital gain in 1958 on the sale of his interest in the fair market value of certain notes, taking into account the adjusted basis of the property and the value of the mother's usufruct interest. We reach the same result here. The amount of the taxable gain can be determined in the Rule 50 computations. Issue 2 Jefferson Music Company Our findings of fact set forth the adjustments made by respondents with regard to the disputed business income and deductions of Jefferson for the years 1956 through 1959. The issues are primarily factual and we have found as a fact that Jefferson is entitled to deduct the following items *73 for the respective years: 1956
1957
1958
1959
Promotion expenses
$6,000.00
$9,000.00
$8,000.00
$ 9,000.00
Route expenses
1,611.68
1,694.24
1,754.16
1,864.04
Miscellaneous expenses
1,202.20
1,403.90
1,693.47
872.35
Travel expenses
300.00
Attorney fees
1,630.00
5,411.80
Bad debts
5,021.99
13,64
Trial expenses
10,198.83
Vehicle maintenance
750.00 In arriving at some of the above-listed amounts we have applied the Cohan rule 39 F. 2d 540, 544) where the evidence indicated certain ordinary and necessary business expenditures were incurred but where petitioners failed to substantiate the exact amounts. Our conclusions are based on the evidence presented, taking into consideration that the lack of substantiation is of petitioners' own making. It appears that most of the promotion expenses incurred and paid by Jefferson were expended by Carlos acting on behalf of the business. In addition to denying the deductions to the partnership, respondent has increased Carlos' income by $5,200 for each of the years 1956 through 1959. Since we have found as a fact that such amounts were properly incurred and *74 deducted by the business, as ordinary and necessary business expenses, none of these amounts should be included in Carlos' income. With regard to the disallowed deductions for depreciation of $3,781.53 for 1956 and $10,610.78 for 1957, we feel respondent must be sustained. Petitioners have failed to submit any competent evidence as to this item, and thus have failed to sustain their burden of proving depreciable basis, prior depreciation, useful life or method of computation. As to deductions for depreciation, Jefferson's books and records are inaccurate, incomplete and inconsistent. We cannot rely on them and we disallow the deductions for each of the years involved. Furthermore, we sustain in part respondent's method of computation of capitalization of certain alleged losses on sales of machines claimed by Jefferson for each of the years 1956 through 1959. It appears that these machines were traded in on new or newer machines and in the absence of being able to assign the capitalized amounts to the new assets, we find respondent's separate capitalization and allowance of a 25 percent depreciation deduction in all years proper. Petitioners have also failed to establish that *75 accountant fees of $3,000 were actually paid in 1958, even though such services may have been rendered in that year, and the deduction is accordingly disallowed. Petitioner's evidence with respect to alleged losses on the sales of vehicles is totally unconvincing and inadequate. Therefore, respondent's disallowance is sustained. One deduction which we have allowed warrants comment. The amount of $10,198.83 was deducted on the return of Jefferson as "trial expenses" for 1959. The expenses were incurred in connection with the defense of a criminal action against Vincent for filing false documents with the Federal Communications Commission on a Citizens Radio Station Construction Permit in the name of Vincent Marcello doing business as Jefferson Music Company. The action resulted in a mistrial and in a second trial in 1960 Vincent was adjudged not guilty. The question before us is whether or not Jefferson is entitled to this deduction as an ordinary and necessary business expense. We think petitioner has established a prima facie case on this point. The record shows that Jefferson operated certain radio equipment to dispatch its fleet of trucks operating under an F.C.C. Citizens license. *76 Even though the criminal action was personal in nature against Vincent, it appears that the defense against that charge was directly related to the application for the F.C.C. license and the retention of that license for use by Jefferson. In our opinion it was both an ordinary and necessary cost of doing business by Jefferson. Cf. Comissioner v. Heininger, 320 U.S. 467 (1944); and Morgan S. Kaufman, 12 T.C. 1114 (1949). See also Commissioner v. Shapiro, 278 F. 2d 556 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court. Issue 3 Town and Country Motel Petitioners contend that respondent, in increasing the distributive shares of Carlos and Salvador in the Town and Country Motel, cannot prevail in his determination because the partnership returns of Town and Country are not in evidence. In our judgment there is no merit to this contention. The disputed amounts are contained in the books and records of Town and Country and the partnership returns are merely informational. We have found as a fact that the partnership did incur miscellaneous business expenses for the fiscal years ended January 31, 1957, 1958 and 1959 of $1,800, $1,200 *77 and $1,900. We arrived at these amounts by applying the Cohan rule. Petitioners' evidence established that numerous small business expenses were incurred and paid by the partnership but because of the lack of substantiation we were unable to conclude that the total amounts claimed by the partnership were in fact incurred as business expenses of the motel operation. We have also found as a fact that the claimed travel expenses for 1958 and 1959 were paid out of partnership funds but that such expenses were not related to that business and they are accordingly disallowed. The $2,000 commission paid by the partnership in the taxable year ended January 31, 1959, appears to be an ordinary and necessary business expense of the partnership. The petitioners and their business associates experienced difficulty in segregating the expenses and costs of their many business enterprises. A typical example of this relates to the alleged interest expenses deducted by the Town and Country partnership during the taxable years before us. The partnership books show payments by check for interest on various loans. While there are a number of loans made by the partnership which actually relate to its *78 business, there is a failure of proof in establishing a connection between a particular interest payment, the loan on which it is being made, and whether or not that loan is connected with the business of the motel. Even as to those loans which were shown to be related to the motel's business, we are unable to ascertain the exact amounts of interest paid during the years involved. Accordingly, we have not allowed all the deductions for interest claimed by the partnership. Once again, applying the Cohan rule, we have found deductible business interest expenses of $5,000 for each of the taxable years ending January 31, 1956, 1957, 1958, and 1959. This is the best approximation of interest expenses of the partnership we have been able to make from the evidence submitted by the petitioners on this issue. The books and records of the partnership are not reliable here because those records also confuse the many business endeavors of the partners in their dealing with other individuals, partnerships and corporations. The issue relating to the deductibility of sales taxes has been conceded by respondent. Petitioner Salvador conceded that the amount of $695 was properly disallowed by respondent *79 as a depreciation deduction for the year 1959. Petitioner has offered no evidence which would tend to show error in respondent's determination as to the disallowance of the entire amount of $864.52. Consequently, respondent's determination is sustained. Issue 4 Gain on Sale of Residence Carlos and Jacqueline contend that they are entitled to postpone the recognition of gain realized by them in 1958 on the sale of their residence under the provisions of section 1034, Internal Revenue Code of 1954. The evidence shows that the petitioners sold the home which was their principal residence at 800 Barataria Boulevard in 1958 and that in the same year a house at 577 Woodvine Street was purchased in the name of Louisa, Carlos' mother. Louisa held record legal title to this new property for the years in issue, although it was apparently used as the residence of Carlos and Jacqueline. Louisa executed an affidavit in which she averred that the title to the property was in her name for convenience only; that the property was bought by and for Carlos; and that she agreed to bind herself to convey the title to Carlos whenever required to do so. Petitioners argue *80 that the document executed by Louisa was a "counter letter" and that under Louisiana law the statements contained in the document are entitled to judicial recognition. Petitioners offered no independent proof as to the facts averred to in the affidavit, and there is nothing, apart from the affidavit, to show that Carlos was the actual purchaser of the residence at 577 Woodvine Street. There was no testimony from Carlos, Jacqueline or Louisa at the trial. Thus, the establishment of the truth of the facts argued by petitioners hinges on the acceptance of Louisa's ex parte affidavit and the alleged facts averred to therein. The term "counter letter" is defined as an agreement to recovery where property has been passed by absolute deed with the intention that it shall serve as security only. Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So. 2d 65, 73 (1943). Since the affidavit executed by Louisa was not an agreement to reconvey, nor was it offered for security, the document, in our opinion, does not qualify as a "counter letter" under Louisiana law. See Karcher v. Karcher, 138 La. 288, 70 So. 228 (1915); *81 Canella v. Canella, 40 So. 2d 377 (La. App. 1950); and Swartz v. Friedenburg, 135 So. 2d 371 (La. App. 1961). Hence we consider it to be a mere ex parte affidavit, which is not acceptable as evidence by us under Rule 31(f), Tax Court Rules of Practice, or under the hearsay rule. Even if we assumed that the instrument is a "counter letter" and is admissible of the facts alleged therein, it is inoperative under Louisiana law as to third parties until filed for registry in the office of the Parish Recorder. Title 9, Sec. 2721, La. Rev. Stats. of 1950; and State ex. rel. Herbert v. Recorder of Mortgages., 175 La. 94, 143 So. 2d 15 (1951). There is no evidence that the instrument was ever recorded in Jefferson Parish. We must therefore conclude that petitioners have failed to establish the facts necessary for us to decide the potential legal question involved as to the application of section 1034 to situations where recorded title is not in the name of the actual purchaser. Consequently, we hold that the gain is to be recognized because of petitioners' failure to meet their burden of proof. The gain should be computed as follows: Total sales price
$103,963.85
Basis
42,500.00
Gain
$ 61,463.85
*82 Petitioners have failed to offer any evidence as to the alleged cost of improvements of the old residence shown on their return as totaling $10,000 so that the cost basis of $42,500 must be used as determined by respondent. It follows that the claimed interest deductions paid by Carlos and Jacqueline in 1958 and 1959 must also be denied for lack of proof. As far as the record establishes, we must assume that the interest was paid on behalf of Louisa for her debt on the mortgage and it cannot be deducted by petitioners. Issue 5 Disallowed Deductions Carlos and Jacqueline Carlos and Jacqueline claimed deductions for 1956, 1957, 1958, and 1959 which were disallowed by respondent are set forth in our findings of fact. Little or no evidence was submitted by them on these matters. Neither Carlos nor Jacqueline testified. With regard to Carlos' automobile expenses, insurance, repairs, and depreciation the evidence submitted is insufficient for us to apply the Cohan principle. There is nothing upon which we can base a conclusion that his expenses were unreimbursed business expenses. Petitioners have also failed to meet their burden of proof with regard to the claimed deductions *83 for miscellaneous trips, tips, meals, losses on a note, and therefore such disallowances are sustained. Furthermore, the attorney fees paid by Carlos in resisting deportation are personal and not deductible. Such expenses are not directly related to the production or collection of income or to the management, conservation or maintenance of property. We do find, however, that the attorney fees of $1,000 paid in 1958 for representation in tax matters are deductible in that year under the provisions of section 212(3). Petitioners have failed to show the extent of their ownership in the Southport properties and their claimed deductions are in conflict with the returns of Anthony and Jeannine. Based on this totally unsatisfactory record as to the interest the petitioners held in these properties, we are constrained to disallow the deductions. The claimed interest deductions of $2,428.61 and $3,372.75 in 1958 and 1959 are directly related to Issue 4 and were discussed in that section of this opinion. Issue 6 Disallowed Deductions Vincent and Sadie Respondent disallowed claimed deductions of Vincent and Sadie on their joint Federal income tax returns for 1958 and 1959 as follows: *84 1958
1959
Sales taxes - materials
for
house
$900
Traveling and entertain-
ment for business, part
not reimbursed by part-
nership
360
$360
Respondent concedes on brief that Vincent and Sadie are entitled to the deduction for Louisiana sales taxes paid in 1958 on materials purchased for their home in the amount of $856.86. The balance is disallowed. Petitioners Vincent and Sadie have failed to show that they are entitled to deductions for travel and entertainment apart from the business of Jefferson Music Company or the Huey Distributing Company and that they were not reimbursed for such expenditures as may have been made. While Vincent testified about the operations of Jefferson he did not offer any testimony or other evidence on these items. The deductions claimed are therefore disallowed. Issue 7 Disallowed Deductions Salvador In the statutory notices mailed to Salvador the following deductions were disallowed: 1958
1959
Contributions - Catholic Church
$ 250.00
$ 260.00
Red Cross, United Fund, Boy Scouts
100.00
100.00
Interest - Guaranty Savings
Homestead
814.36
627.41
Taxes - Sales taxes
120.00
120.00
La. Income Tax
466.03
631.24
Gasoline tax 1,000 gal.
70.00
70.00
License
3.00
3.00
Travel and Miscellaneous entertainment
not reimbursed
360.00
None
Totals
$2,183.39
$1,811.65
*85 Respondent has conceded that Salvador is entitled to deductions of $466.03 and $631.24 for the years 1958 and 1959 for State income taxes. Petitioner's testimony establishes to our satisfaction that he is entitled to deduct contributions of $350 and $360 made for the years 1958 and 1959. These cash contributions were made to organized and exempt charities and to the Catholic Church. We also find that petitioner's deductions totaling $193, for each year covering gasoline taxes, state sales taxes, and driver's license were reasonable and we therefore allow them. Interest was paid by Salvador in 1958 and 1959 in the amounts of $814.36 and $627.41 to Guaranty Homestead Association, the holder of a loan on Salvador's home. The mortgage was actually shown on the Association's books as a jont indebtedness of Salvador and Anthony. The home was used exclusively by Salvador after his brother and his brother's wife moved into their own home in 1958. These interest payments, we find, are properly deductible by Salvador since they were paid by him in the respective years on a debt for which he was liable. We also hold that Salvador is entitled to deduct $300 in 1958 for travel and miscellaneous *86 entertainment business expenses. Petitioner's testimony indicated that he incurred unreimbursed business expenses while performing his duties for Jefferson Music Company and Town and Country Motel. The claimed deduction was an estimate to which we have applied the Cohan rule. Issue 8 Section 6651(a) Addition to Tax Carlos and Jacqueline Respondent determined that petitioners, Carlos and Jacqueline, are subject to the imposition of an addition to tax under section 6651(a), for the year 1959 in the amount of $3,084.09. Carlos and Jacqueline were granted extensions of time to September 15, 1960, for the filing of their 1959 Federal income tax return by the district director of internal revenue, New Orleans, Louisiana, but by letter dated September 23, 1960, addressed to those petitioners, the district director refused a request for a further extension of time and the petitioners were therein advised the return would be considered timely filed if received within ten days of the receipt of the letter. The 1959 joint income tax return of Carlos and Jacqueline was filed with the office of district director of New Orleans, Louisiana, on October 18, 1960. Some evidence was introduced *87 at the trial on behalf of Carlos and Jacqueline bearing on the determination of deficiency of those petitioners for 1959 but no direct evidence was introduced on their behalf covering the asserted addition to tax. Accordingly, we sustain respondent's determination on this issue. The correct amount of the addition to tax can be arrived at in the Rule 50 computation. Issue 9 Section 6653(a) Additions to Tax Petitioners' failure to report the gain realized on the sale of their respective interests in inherited property in 1958 was not due to negligence because of the complex legal questions involved. With respect to petitioner Salvador for the years 1958 and 1959, we have sustained most of the deductions claimed by him. However, we find that his failure in 1958 and 1959 to properly report his proportionate share of partnership income, was due to negligence. The partnership, of which he was an active member, failed to keep proper books and records for which each partner must be deemed responsible in the absence of evidence as to the ultimate responsibility for keeping the books or other mitigating circumstances. Accordingly, the penalty must be sustained for each of the years *88 1958 and 1959. With respect to petitioners Vincent and Sadie for the years 1958 and 1959, the presumption of correctness attaching to respondent's determination has not been overcome by petitioners. Therefore, we find for the respondent for both years. To reflect the adjustments contained herein, Decisions will be entered under Rule 50. Footnotes
1. Consolidated herewith for opinion are the cases of Vincent and Sadie Marcello, Docket No. 2653-62 and Salvador J. Marcello, Docket Nos. 2654-62 and 2380-63. ↩
2. All references herein are to the Internal Revenue Code of 1954.↩
*. Errors noted in totals. Totals should read $32,628.38 and $36,409.91, respectively.↩
1. This is being reported in accordance with the 1954 Code; reference sale of residence-subject requirements will be complied with.↩